30 C.C.P.A.(Patents)

## PAULSON v. MASCUCH.

## HYLAND v. MASCUCH.

Patent Appeals Nos. 4695, 4696.

Court of Customs and Patent Appeals.

June 1, 1943.

Harry A. Yerkes, Jr., of New York City (Lee B. Kemon, of Washington, D. C., of counsel), for Paulson.

Commander R. A. Lavender, U. S. N., and Cameron, Kerkam & Sutton, all of Washington, D. C. (Loyd H. Sutton, T. Hayward Brown, and Gordon W. Daisley, all of Washington, D. C., of counsel), for Hyland.

Randolph B. Cousins, of New York City (Cousins & Cousins and C. C. Cousins, all of New York City, of counsel), for Mascuch.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

There is here brought before us for review two appeals from a decision of the Board of Appeals of the United States Patent Office in an interference proceeding. The decision appealed from awarded Mascuch priority of the invention defined in the single count in issue, which reads as follows:

"In a spark plug of the type having a cylinder engaging shell carrying one electrode and a shielded conductor electrically connected to the other electrode, the combination with said conductor and shell of a shield having a cylindrical portion secured at its lower end by direct, locking contact with said shell and a second angularly-directed portion embracing the end of said conductor and electrically connected with the shield thereof and means for holding the two portions of said shield in engagement with each other whereby an electrical connection is maintained from the shield of said conductor through the two portions of said shield to said shell."

The object of the combination stated in the count is to prevent the electro-magnetic waves generated by the operation of the spark plug from interfering with the operation of radio receivers.

The interference is between the following applications, viz., the application of Mascuch filed April 27, 1929, the application of Hyland filed July 1, 1929, and the application of Paulson filed July 15, 1929.

It thus appears that Mascuch is the senior party, and the burden was upon Hyland and Paulson respectively to establish priority of invention over Mascuch by a preponderance of evidence.

The record shows that the applications have been assigned as follows: The Mascuch application to Breeze Corporations;

the Hyland application to a subsidiary of the Bendix Aviation Corporation; and the Paulson application to the B. G. Corporation.

The general subject matter here involved is also involved in a series of appeals decided concurrently herewith, Shumaker v. Paulson, 30 C.C.P.A., Patents, ——, 136 F.2d 686, Paulson v. Hyland, 30 C.C.P.A., Patents, ——, 136 F.2d 695, and Shumaker v. Paulson, 30 C.C.P.A., Patents, ——, 136 F.2d 700.

The Examiner of Interferences decided that Mascuch was the first to conceive the invention, that none of the parties had established an actual reduction to practice prior to the filing date of the Mascuch application, and therefore, he being the first to conceive the invention and the first to reduce it to practice by the filing of his application, was adjudged to be the prior inventor.

The Board of Appeals affirmed the decision of the examiner upon all points, and as hereinbefore indicated, Hyland and Paulson have filed separate appeals from such decision.

■ Inasmuch as the issue involves principally questions of fact upon which the Patent Office tribunals concurred, the rule is here applicable that concurring findings of fact by such tribunals will be accepted by us unless they are manifestly wrong.

It appears that Mascuch is president of the Breeze Corporations, which is engaged in the manufacture of spark plugs; that during the years 1920 to 1923 he was engaged in the manufacture and sale of spark plugs; that thereafter until 1926 he was engaged in the design and sale of automobile bumpers. He testified that in the latter part of 1925 he became interested in the shielding of spark plugs; that in February 1926 he conceived the involved invention and shortly thereafter had made for him ten spark plugs embodying the invention and placed eight of them in a Lincoln car containing a radio, and that the operation of the car showed the plugs worked an improvement in the radio reception.

The Examiner of Interferences held that a sketch introduced in evidence as Mascuch Exhibit 9 clearly discloses the elements of the count. This sketch is dated April 1, 1926, and bears the signature of appellee and the signatures of J. T. Mascuch, a

brother of appellee, and one S. H. Roberts, an employee of the Breeze Corporations.

Upon the point of corroboration of this sketch, the Examiner of Interferences stated:

"It is considered necessary, however, only to discuss Mascuch exhibit 9 which clearly shows the issue and if proven as of the date on the sketch by the two witnesses J. T. Mascuch and Roberts, both of whom state that they signed the sketch (Mascuch record, pages 404, 574) on April 1, 1926, will be sufficient to establish prior conception on behalf of the senior party Mascuch.

"While neither witness specifically stated that the drawing Mascuch exhibit 9 was in the same condition at the time of taking testimony as it was when they witnessed and dated it, both did, however, state that within a week or so after the sketch was made, Mascuch exhibit 10 or a similar device, was fabricated (Mascuch record, pages 405, 575). Mascuch exhibit 10 corresponds closely to Mascuch exhibit 9 and the drawing considered with the witnesses' testimony that similar devices were built is held to carry sufficient probative force to establish the existence of the subject matter of the count on behalf of Mascuch as early as April, 1926, which date is awarded him as his date of conception.

"Mascuch will accordingly prevail as the first to conceive and constructively reduce to practice regardless of his diligence should neither junior party establish as actual reduction to practice prior to Mascuch's date of filing since his date of conception is long prior to any date available to either junior party or attempted to be proved in their behalf."

The Board of Appeals did not discuss the question of the date of conception to which Mascuch is entitled, but merely stated the holdings of the Examiner of Interferences as last above quoted, and its approval thereof was indicated by the general affirmation of the decision of the examiner.

With respect to the question of whether the Mascuch Exhibit 9 discloses the involved invention, we are in accord with the Patent Office tribunals that it is there disclosed.

With regard to whether the proof establishes the date of April 1, 1926, as the date of disclosure of the invention by

Mascuch to others, we would first observe that after the original decision of the Examiner of Interferences herein, the case was, upon order of. the commissioner, reopened to permit the introduction of newly discovered evidence, consisting of the record of the conviction of appellee of the crime of perjury in the state of New York while these interference proceedings were pending. The crime for which appellee was convicted had no relation to the matters here involved. Subsequent to the reopening of the case, the examiner adhered to his original decision, stating that his conclusion as to the date of conception to which Mascuch is entitled was arrived at wholly upon the testimony of his corroborating witnesses, whose credibility had not been attacked.

Upon the entire record we cannot hold that the Patent Office tribunals were manifestly wrong in holding that Mascuch is entitled to a date for conception of the invention as early as April 1926.

In view of our conclusions hereinafter stated, it is unnecessary to discuss the contention of Mascuch that upon the evidence he is entitled to a finding of actual reduction to practice of the invention in 1926 or at any other time prior to his filing date.

The foregoing discussion is applicable, so far as Mascuch is concerned, to both appeals, and we will next proceed to the separate consideration of respective contentions of Hyland and Paulson, as presented in their appeals.

## Appeal No. 4695.

It is Paulson's contention:

1. That Mascuch Exhibits 9 and 10, which formed the basis of awarding him a date of conception as early as April, 1926, do not support the count.

2. That Paulson upon the record is entitled to an actual reduction to practice on or before February 1, 1929.

With respect to his first contention we hold as hereinbefore stated, that we will not disturb the findings of the Patent Office tribunals in this regard.

With regard to the second contention above stated, Paulson here relies upon the same reduction to practice claimed in Appeal 4691, and concurrently decided herewith. Paulson v. Hyland, supra.

The evidence here relied upon by Paulson for reduction to practice is the same as was relied upon in the above cited case, and our decision in said case with respect to the insufficiency of the proof of testing the Paulson spark plugs embodying the invention there involved is applicable to the invention here involved.

Therefore the decision appealed. from is affirmed.

## Appeal No. 4696.

In this appeal Hyland contends:

1. That if it be held that Mascuch Exhibits 9 and 10 support the count, his Exhibits 2 and 3 likewise support the count, and that the evidence establishes conception and actual reduction to practice on July 1928 of the structure disclosed in said Exhibits 2 and 3.

2. That he actually reduced to practice in August 1928 a structure similar to that shown in Hyland Exhibit 7, which he claims supports the count.

3. That the board erred in finding that Mascuch is entitled to a date of conception as early as April 1926.

This last contention has hereinbefore been considered and ruled upon by us, adverse to Hyland's contention.

With respect to the first contention above stated, the Examiner of Interferences stated:

"Hyland exhibits 2 and 3 are directed to a can type shield and the structure shown in exhibit 2 is said to have been tested in 1928 (Hyland record, pages 40, 41). However, this device, if proven, is not pertinent to the issue which calls for a 'second-angularly directed portion' which structure does not appear in the exhibit that shows at best merely a small side bushing such as is commonly found in electric light sockets from which the article illustrated in the exhibit was fabricated (Hyland record, pages 38, Q. 55).

"For similar reasons it is also held that Hyland exhibit 3 does not satisfy the issue since it is similarly constructed lacking a 'second angularly directed portion' except for bushing B (marked in pencil on the drawing) which is considered not be such structure within the purview of the count. Furthermore, the bushing, if it were considered to be an angularly directed member does not 'embrace the end of the conductor' as recited by the count, but some intermediate portion, the end of the conductor being (in the case of both exhibits 2 and 3) in the approximate top central portion of the main vertical leg of the can which con-

stitutes the major portion of the shield structure."

The Board of Appeals upon this point stated: "With respect to Hyland's Exhibits 2 and 3, the examiner states that they are directed to a can type shield and that Exhibit 2 is said to have been tested in 1928, but he states that this device is not pertinent to the issue which calls for a second angularly directed portion, which structure does not appear in the exhibit and that this exhibit shows at best merely a small side bushing such as is commonly found in electric light sockets from which the article illustrated in the exhibit was fabricated according to the Hyland record. The count of this interference is directed to what is generally designated as an elbow plug and the Hyland Exhibits 2 and 3 are considered not to disclose this structure.

While the rule is, of course, that interference counts must be broadly construed, we are of the opinion that it does not warrant a holding that the small side bushing of an electric light socket, which the testimony shows the exhibits represent, is such an "angularly directed portion" as the count requires.

We would here observe that there is no resemblance between the drawings of Hyland's instant application and said Exhibit 3.

Inasmuch as we do not find error in the findings of the Patent Office tribunals that Hyland's Exhibits 2 and 3 do not support the count, it is immaterial whether spark plugs made in accordance with said exhibits were successfully tested or not.

The next contention of Hyland is that a spark plug similar to Hyland's Exhibit 7 was constructed and tested in August 1928; that the test was satisfactory and constituted an actual reduction to practice by Hyland of the invention.

With respect to this contention, the Examiner of Interferences stated:

"As regards Hyland exhibit 7, it is alleged that tests were made on a device similar to that shown in this sketch with bakelite forming the insulated elbow structure in August, 1928 (Hyland record, pages 3, 5, XQ.729). However, it is not considered that the test allegedly using the structure shown in exhibit 7 was conducted with sufficient other structure to satisfy the count which calls for a 'shield having a cylindrical portion secured at its lower end by direct locking contact with said shell.' In this case the inventor testifying that in order to shield the bakelite elbow the flexible shielding of the ignition cable was merely drawn until it completely covered the plug (Hyland record, page 315, XQ. 732; page 57, Q. 168). This temporary structure 'haywire' in nature (page 57, Q. 168) as characterized by the inventor is considered totally insufficient to establish the definite structure as called for the counts.

The Board of Appeals upon this point stated as follows:

"The examiner considered that Hyland Exhibit 7 was not tested with sufficient other structure to satisfy the count which calls for 'a shield having a cylindrical portion secured at its lower end by direct locking contact with said shell'. The examiner points out that in this case the inventor, Hyland, testified that in order to shield the Bakelite elbow the flexible shielding of the ignition cable was drawn down until it completely covered the plug. In answer to XQ. 732, Hyland agreed that there was no attachment on the elbow to make a connection with the parallel shielding element of the shielded plug.

"Hyland argued on page 141 of his main brief that the Examiner of Interferences erred in ruling that the tests made on a structure similar to that shown in the sketch of Hyland Exhibit 7 were not conducted with sufficient other structure to satisfy the count. It is contended that the examiner overlooked the fact that the structure of Hyland Exhibit 7 included an element 5 fully responding to this portion of the count. It is also stated that Blount's report of August 18, 1928, Hyland Exhibit 49-D, specifically mentions this construction in the second paragraph thereof. On examination, it is not clear how the description in this paragraph applies to Exhibit 7 and it is believed that the examiner's position is correct."

Hyland upon his direct examination testified as follows:

"Q167. With respect to the insulator elbows similar in construction to Exhibit 7, did you also replace the main body of the spark plug? A. My recollection is that I did not replace the main body of the spark plug for the reason that it required this special screw-on fitting. As I recall, the installation of the screw-on fitting was relatively unimportant to us. I think that I took the original chewed-out Bakelite

insulator elbow and wired it down in place, because the screw caps came on at a later date, and pulled the braid over that plug and then wired the braid in place for the first tests.

"Q168. How did you wire the Bakelite in place before the ignition cable braid was pulled over it? A. Well, I assume that I made several turns of wire around the barrel of the plug. I may even have gone down to the screw or the hex portion of the plug to get a good purchase, and then brought the wire up over the top of the elbow, so that it would be rigidly held in place, and then bring the shield down over the whole assembly. If you are accustomed to radio hay wire methods of putting things together, that is perfectly understandable."

Upon cross-examination Hyland further testified with respect to this matter as follows:

"XQ732. From your direct testimony I understand that there was no attachment on that elbow to make a connection with the barrel shielding element of the shielded plug and that you wired that elbow to the plug. Is that correct? A. That is correct.

"XQ733. And then you drew the shielding from the ignition cable until it completely covered the elbow? A. That is correct."

In view of this testimony of Hyland, we cannot say that the Patent Office tribunals were manifestly wrong in holding that it is not established that the Hyland spark plugs tested in August 1928 support the count before us.

It appears that before the Patent Office tribunals Hyland urged that the invention defined in the count had also been reduced to practice in December, 1928.

Upon this point the Examiner of Interferences stated:

"Hyland apparently made another test using structure similar to Hyland exhibits 17 and 18 in December, 1928, with the bakelite insulation of Hyland exhibit 7 now replaced with 'isolantite.' It is not clear, however, from the testimony of all the witnesses that this exhibit was ever tested to determine if the device was effective from a radio-shielding standpoint or that the December, 1928, test included the use of shielded ignition wire called for by the count, for despite the inventor's testimony to the contrary, at least one witness Whoolery, a mechanic who aided in the installation of a number of devices

similar to Hyland exhibit 18 stated that the ignition wire was 'conventional' (Hyland record, page 217, XQ.58) and as far as he remembered without shielding at that time (XQ.59).

"Further than this there appears to be no corroborated testimony of subsequent tests although Hyland mentions a test in March or April, 1929, on an improved device presumably that shown in, or one similar to, Hyland exhibits 27, 28 (Hyland record, page 114, Qs. 403-406).

"Testimony of the nature discussed above relating to structures which either do not wholly satisfy the counts or concerning which the corroboratory testimony is not clear and concerning which the corroboratory testimony is not clear and convincing are not deemed to be of sufficient probative force to establish a successful reduction to practice on behalf of Hyland. Accordingly, Hyland can not prevail over the senior party's prior conception and constructive reduction to practice."

The Board of Appeals approved the foregoing by its general affirmance of the decision of the Examiner of Interferences.

With respect to Hyland's Exhibits 17 and 18 the board stated: "Hyland made another test using structure similar to his Exhibits 17 and 18 in December, 1928 with the Bakelite insulation of Exhibit 7 replaced with 'isolantite'. It is not clear from the testimony of the witnesses that this exhibit was ever tested to determine if the device was effective from a radio shielding standpoint or that the December, 1928 test included the use of shielded ignition wire called for by the count."

We find no error in the above stated holdings of the Patent Office tribunals and in fact the Hyland brief before us does not urge that the test of Exhibits 17 and 18 constituted a reduction to practice by Hyland, but only evidence of his diligence in reducing the invention to practice.

█ Upon all the foregoing we are unable to find reversible error by the Board of Appeals in awarding priority of invention to Mascuch upon the ground that he was the first to conceive the invention and the first to reduce it to practice by the filing of his application.

Therefore the decision appealed from is affirmed.

To recapitulate, the decision of the Board of Appeals is affirmed in Appeals Nos. 4695 and 4696.

Affirmed.